UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY MARTIN MIRANDA,<br><br>　　Plaintiff,<br><br>　v.<br><br>R. K. SWIFT, et al.,<br><br>　　Defendants. | Case No. 17-04000 BLF (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br><br>(Docket No. 41) |

Plaintiff, a California inmate, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, against prison officials at the Pelican Bay State Prison, ("PBSP"). Dkt. No. 1. The Court found the complaint stated cognizable claims and ordered the matter served on Defendants Warden R. K. Swift, Captain G. W. Olson, Lt. R. Graves, Sgt. R. Navarro, Officer Bumby[1] and Officer Espinoza. Dkt. No. 12. Plaintiff later filed a motion for leave to file an amended complaint, Dkt. No. 40, to which all served Defendants filed a

---

[1] According to the Litigation Coordinator at PBSP, Defendant Bumby passed away on March 14, 2017. Dkt. No. 19. Plaintiff was advised to locate Defendant Bumby's successor or representative, serve them, and then move for substitution of the decedent party. Dkt. No. 20 at 2. To date, Plaintiff has failed to do so. For the reasons discussed below, the claims against Defendant Bumby are also dismissed. *See infra* at 15-16.

1

statement of non-opposition and concurrently, a motion to screen and dismiss for failure to state a claim. Dkt. No. 41. Accordingly, the Court granted Plaintiff's motion for leave to amend, making the amended complaint the operative complaint in this matter. Dkt. No. 43. Concurrently, the Court screened the amended complaint and found it state cognizable claims for the violation of Plaintiff's right to peaceful protest and against retaliation under the First Amendment, and right to due process under the Fourteenth Amendment. Dkt. No. 43 at 3. The Court dismissed an Eighth Amendment claim for failure to state a claim. *Id.* at 4. The Court directed Plaintiff to file an opposition to Defendants' motion to dismiss. *Id.* Thereafter, the Court granted Plaintiff three extensions of time to file opposition. Dkt. Nos. 45, 49, 52. To date, Plaintiff has not filed a response. Accordingly, Defendants' motion to dismiss is deemed submitted.

For the reasons discussed below, Defendants' motion to dismiss is **GRANTED**.

## DISCUSSION

### I. Plaintiff's Allegations

On July 8, 2013, some inmates at PBSP in the Security Housing Unit ("SHU") commenced a hunger strike to protest prison conditions. Dkt. 40 at 29; *see also* Dkt. No. 41 at 7, citing *Dumbrique v. Brunner, et al.*, No. 14-cv-02598-HSG 2016 WL 3268875 (N.D. Cal. June 15, 2016).[2] On the same day, Plaintiff, who was also confined in the SHU, refused his meal tray. Dkt. No. 40 at 6. Plaintiff claims he did so to protest the prison gang validation process. *Id*.

On July 10, 2013, prison officials found that Plaintiff had refused his ninth

---

[2] A district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citations omitted) (granting request to take judicial notice in § 1983 action of five prior cases in which plaintiff was pro se litigant, to counter her argument that she deserved special treatment because of her *pro se* status).

2

consecutive meal tray. Dkt. No. 40 at 6. At that point, PBSP officials determined that his repeated refusals constituted a hunger strike. *Id.* Although Plaintiff denied that he was on a hunger strike, he was nevertheless peaceably protesting by refusing his meal trays. *Id.* Meanwhile, he was eating food that he had obtained from the canteen. *Id.* at 7.

On July 10, 2013, Defendant Sgt. Navarro wrote a prison Rules Violation Report ("RVR") against Plaintiff for "willfully delaying a peace officer in the performance of duty/participation in a mass disturbance (hunger strike)." Dkt. No. 40 at 7.

On July 12, 2013, Defendants Officers Bumby and Espinoza confiscated personal food items from Plaintiff's cell without issuing an RVR or conducting a hearing. Dkt. No. 40 at 7. Plaintiff claims they did so in retaliation for his peaceful protest, and that their actions amounted to punishment or coercion to chill his rights. *Id.* After that, Plaintiff began accepting his meal trays. *Id*.

On August 20, 2013, Defendant Lt. Graves, the Senior Hearing Officer ("SHO") at Plaintiff's RVR hearing, denied Plaintiffs' request to call Officers Bumby and Espinoza as witnesses. Dkt. No. 40 at 8. Plaintiff asserts that he was prejudiced by the denial of these witnesses because he had told them that he was not on a hunger strike. *Id.* at 9.

During the hearing, Defendant Navarro sat outside the gated holding cell where the hearing as being conducted. Dkt. No. 40 at 9. He was also called as a witness. *Id.* at 31. After the hearing, Defendant Graves placed Plaintiff on a 90-day appliance restriction. *Id.* at 10. Plaintiff informed Defendant Graves that he had no prior disciplinary actions in the SHU. *Id.* However, Plaintiff was mistaken in that he had one prior RVR, which would justify only a 60-day rather than a 90-day restriction on the use of appliances. *Id.* at 11. Accordingly, when Plaintiff appealed the RVR finding, the reviewing officials reduced the restriction to 60 days. Dkt. No. 40 at 23.

Plaintiff claims that Defendants violated his First Amendment right to peacefully protest the prison gang validation process. Dkt. No. 40 at 3-4. Plaintiff also claims that

3

his right to due process was violated during the disciplinary hearing because he was not given proper notice, he was denied his right to call witnesses, the officer who wrote the RVR was present during the RVR, and the 90-day restriction of privileges was arbitrary. *Id.* at 6-7. Lastly, Plaintiff claims that Defendants' actions in taking his personal food items and issuing an RVR were done in retaliation for the exercise of this First Amendment right to peaceful protest. *Id.* at 5-6. Plaintiff seeks declaratory and injunctive relief, as well as damages.

## II.     Motion to Dismiss

In the motion to dismiss, Defendants argue that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment, they are entitled to qualified immunity on his First Amendment and retaliation claims, Plaintiff has failed to state a claim for a denial of due process and they are entitled to qualified immunity on that claim, and lastly, Plaintiff cannot maintain claims for injunctive or declaratory relief. Dkt. No. 41.

### A.     Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal for failure to state a claim is a ruling on a question of law. *See Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

4

Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *See Symington*, 51 F.3d at 1484. The court may consider "'allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal citation omitted).

Qualified immunity may be raised in a Rule 12(b)(6) motion and granted where defendants are entitled to the defense based on plaintiff's allegations. *Cousins v. Lockyer*, 568 F.3d 1063, 1071 (9th Cir. 2009).

### B. Official Capacity Claim for Damages

Plaintiff seeks monetary relief from Defendants in their individual and official capacities. Dkt. No. 40 at 4-5. Defendants assert that Plaintiff's official-capacity claims for damages are barred by the Eleventh Amendment. Dkt. No. 41 at 8-9.

The Eleventh Amendment to the U.S. Constitution bars a person from suing a state in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The U.S. Supreme Court has held that state officials acting in their official capacities are not "persons" under Section 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, such a suit is therefore no different from a suit against the state itself. *Id.*

Accordingly, the Eleventh Amendment bars Plaintiff's claims for monetary relief to the extent that they are based on acts by Defendants in their official capacities. *See id.*; *Nesbit v. Dep't of Pub. Safety*, Nos 06-16428, 06-16623, 283 Fed. Appx. 531, 533 (9th Cir. 2008) (unpublished memorandum disposition) (concluding that the district court properly dismissed prisoners' claims against defendants acting in their official capacities). Defendants' motion to dismiss Plaintiff's damages claims against them in their official

5

capacities is GRANTED, and those claims are DISMISSED with prejudice. Because it is absolutely clear that this jurisdictional bar cannot be cured by further amendment to the complaint, the dismissal of Plaintiff's claims against Defendants in their official capacities is without leave to amend.

### C. First Amendment Claims

Plaintiff claims that he has a right to peaceful protest by refusing food under the First Amendment, and that Defendants violated that right when they issued him an RVR. Plaintiff also asserts that because Defendants confiscated his food and issued him an RVR for engaging in protected conduct, their actions were retaliatory. Defendants assert that they are entitled to qualified immunity based on Plaintiff's allegations regarding these claims. Dkt. No. 41 at 9.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id.* at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*,

555 U.S. at 236.

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citations omitted) (law not clearly established whether officer may conduct a 'knock and talk' at any entrance to a home that is open to visitors, rather than only the front door); *accord Browning v. Vernon*, 44 F.3d 818, 823 (9th Cir. 1995) ("the contours of the right must be sufficiently clear so that a reasonable official would know that his conduct violates that right"). To define the law in question too narrowly would be to allow defendants to define away all potential claims. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Ultimately, however, the dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202. A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent, the court should look to all available decisional law, including the law of other circuits and district courts. *See id.*

Defendants assert that Plaintiff fails to satisfy the second prong for qualified immunity because reasonable officials in Defendants' positions would not have known that they violated Plaintiff's rights when they disciplined him for participating in the hunger strike. Dkt. No. 41 at 9. They assert that there is no clearly established law that inmates have a right to participate in hunger strikes. *Id.* Furthermore, they assert that because no clearly established law provides that inmates have a right to participate in strikes, they are also entitled to qualified immunity on Plaintiff's retaliation claim because there was no

7

protected conduct. *Id.* Defendants point out that although Plaintiff insists that he was "not on a hunger strike" and that his refusal to accept food trays was a type of protest, there is no constitutional right to refuse to eat. *Id.* at 10. Defendants assert, therefore, that reasonable officials in Defendants' positions would not have known that there is a constitutional right for prisoners to participate in a mass protest by refusing food. *Id.* Furthermore, Defendants assert that Defendant Espinoza would not have known that her actions would be deemed retaliatory where there was no clearly established law that a hunger strike was protected conduct. *Id.* at 9-10.

Viewing the allegations in the complaint in the light most favorable to Plaintiff, Defendants are entitled to qualified immunity on the First Amendment claims against them. Plaintiff asserts that he was not participating in the hunger strike, and that his refusal of the food trays was in protest to a separate issue. However, the papers submitted with Plaintiff's amended complaint clearly show that Defendants believed, despite his denials, that Plaintiff was willfully participating in a "planned, statewide hunger strike/work stoppage/mass disturbance organized by the inmates housed in the SHU at PBSP" based on the fact that he was an inmate housed in the SHU and that he began to refuse his meal trays on the same day the hunger strike began. Dkt. No. 40 at 29. Plaintiff does not allege that Defendants believed that he was not actually participating in the hunger strike and that the RVR was issued as a pretense; rather, the papers show that Defendants simply did not believe his denials in that regard. Notwithstanding his personal motivations, Plaintiff's actions of refusing nine consecutive meals fit the prison's definition of a hunger strike under PBSP Operational Procedure No. 228 which provides that "[w]hen an inmate(s) refuses nine or more consecutive state issued meals, they shall be identified as a participant of a hunger strike." Dkt. No. 40 at 26. That same regulation directs prison officials to "[e]nsure disciplinary action is taken against participating inmates[.]" *Id.* Plaintiff does not deny that he refused nine consecutive meals as charged

8

in the RVR. Accordingly, for the purposes of qualified immunity, the Court need only discuss whether reasonable officials in Defendants' positions would be on notice that they were violating a clearly established right to participate in a hunger strike when they disciplined Plaintiff for it or acted in a retaliatory manner based on such allegedly protected conduct.

As Defendants have shown, there is no Supreme Court precedent nor Ninth Circuit cases prior to August 2013, establishing or directly addressing whether prison hunger strikes are protected speech, much less the refusal to accept meal trays. *Dumbrique*, *supra*, 2016 WL 3268875 at *14; *see also Arredondo v. Drager*, No. 14-CV-04687-HSG, 2016 WL 3755958, at *15-16 (N.D. Cal. July 14, 2016). As the district court observed in *Dumbrique*, a review of non-binding precedent revealed that "district court and out-of-circuit cases discussing [the] issue [of whether hunger strikes are protected speech] are not only unpublished, but are also inconsistent in the depth of their analysis regarding whether hunger strike is considered protected speech in a prison setting." *Id.* The *Dumbrique* court then considered a Fifth Circuit case involving the issue of whether a jail inmate had a First Amendment right to go on a hunger strike and contact the media regarding his hunger strike. *Stefanoff v. Hays County, Tex.,* 154 F.3d 523, 527 (5th Cir. 1998). That court found that although hunger strike protest activities could be protected if they were intended to convey a particularized message, prison officials retained the power to fashion restrictions, and that a hunger strike could be "sufficiently disruptive that [the sheriff] had a legitimate penological interest in curtailing them." *Id.* at 527. Based on its review of the relevant case law, the district court in *Dumbrique* found that defendants were entitled to qualified immunity for claims arising from the plaintiff's hunger strike. *Dumbrique*, 2016 WL 3268875 at *15.

Since *Dumbrique*, another judge within the Northern District has issued an additional order finding that officers who enforced hunger strike rules at PBSP in July

9

2013 are entitled to qualified immunity on retaliation claims. Specifically, in *Spruiell v. Graves, et al.,* the Court found that "there was no clearly established law in July 2013 that disciplining a plaintiff for engaging in a hunger strike would chill or infringe upon plaintiff's First Amendment rights," and that the defendant in that case was entitled to qualified immunity. Case No. C 16-5385 WHA (PR), Dkt. No. 49 at 5.

Based on the above review of the hunger-strike related cases as of August 2013, the Court finds that even if Plaintiff were able to establish that he had a right to peaceful protest through a hunger strike, Defendants are entitled to qualified immunity because at the time, reasonable officers in their position would not have been on notice of any clearly established law that disciplining an inmate for participating in a hunger strike violated the First Amendment. *See Pearson*, 555 U.S. at 236. Plaintiff has filed no opposition in response to show otherwise.

The same is true for the retaliation claims against all the Defendants. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Here, Defendants would not have been on notice that Plaintiff's actions constituted protected conduct where such right was not clearly established as discussed above. *See Spruiell*, Case No. C 16-5358 WHA. Therefore, it cannot be said that it would have been clear to reasonable officers in Defendants' position that their actions would be considered retaliatory where they were not aware that Plaintiff was engaged in protected conduct. Again, Plaintiff has filed no opposition in response to show otherwise. Accordingly, Defendants' motion to dismiss the First Amendment claims

against them based on qualified immunity should be granted.[3]

### D. **Fourteenth Amendment Claim**

Plaintiff claims that his due process rights were violated during the disciplinary proceedings by Defendants Navarro and Graves because he was not provided with proper notice, he was denied the right to call witnesses, the proceedings were not impartial because the officer who authored the RVR was present, and the penalty imposed was arbitrary. Dkt. No. 40 at 7-11. Defendants assert that Plaintiff fails to state a claim for due process, and alternatively, they are entitled to qualified immunity. Dkt. No. 41 at 13-14.

Interests that are procedurally protected by the Due Process Clause may arise from two sources – the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). A state may not impose such changes without complying with minimum requirements of procedural due process. *See id*. at 484.

Allegations by a prisoner that he was denied due process in conjunction with a disciplinary proceeding do not present a constitutionally cognizable claim unless the deprivation suffered is one of "real substance" as defined in *Sandin*. "Real substance" will generally be limited to freedom from (1) restraint that imposes "atypical and significant

---

[3] Defendants also assert that a reasonable official in their position would not have known that enforcing PBSP Operational Procedure No. 228 violated any other clearly established First Amendment law. Dkt. No. 41 at 11-12. However, nowhere in the FAC does Plaintiff challenge the validity of this prison regulation. Rather, Plaintiff is essentially asserting that PBSP Operational Procedure No. 228 did not apply to him because he was not on a hunger strike and therefore Defendants' actions in finding him guilty for it were wrong. Accordingly, this argument by Defendants is irrelevant and the Court need not address it.

11

hardship on the inmate in relation to the ordinary incidents of prison life," *id*. at 484,3 or (2) state action that "will inevitably affect the duration of [a] sentence," *id*. at 487. In determining whether a restraint is an "atypical and significant hardship," *Sandin* suggests that courts should consider whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; the duration of the condition; the degree of restraint imposed; and whether the discipline will invariably affect the duration of the prisoner's sentence. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003). The Ninth Circuit has also suggested that conditions of confinement which violate the Eighth Amendment constitute "atypical and significant hardship." *See Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998). However, the *Sandin* test is not synonymous with Eighth Amendment violation: "[w]hat less egregious condition or combination of conditions or factors would meet the test requires case by case, fact by fact consideration." *Id*. If the deprivation is one of "real substance," *Wolff's* procedural protections must be afforded.

The papers submitted by Plaintiff show that forfeiture of good time credits could not be imposed because time limits within which to hear the RVR had been exceeded. Dkt. No. 40 at 30. Therefore, for the guilty finding, Plaintiff was ultimately assessed a suspension of appliance privileges for 60 days. *Id*. at 23, 31. Defendants assert that although Plaintiff was put on an appliance restriction, prison officials did not impose an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life under *Sandin*. Dkt. No. 41 at 13. Defendants are correct. Generally, the loss of privileges in prison does not constitute an atypical hardship relative to the ordinary conditions of prison life because privileges are often regulated by the prison. *See, e.g., Wyatt v. Swearingen*, No. C 06-4228 RMW (PR), 2010 WL 135322, at *8 (N.D. Cal. Jan.

5, 2010) (finding difficulties that prisoner suffered from having privileges restricted due to a change in privilege group, which impacted family visits, canteen draw, telephone access, and receipt of packages, were not atypical or significant, relative to ordinary prison life). *See also Byrd v. Lynn*, 2:10-cv-0839 KJM (E.D. Cal.) 2013 WL 13206048 at *1 (restriction on in-cell radio and television restriction does not constitute a significant hardship). The papers submitted by Plaintiff show that access to recreational appliances such as TVs and radios was considered a privilege by the prison and therefore within its discretionary authority. Dkt. No. 40 at 31. No other restriction or loss of privileges was imposed. *Id.* Nor is there is any allegation or indication that the temporary loss of appliance privileges would invariably affect the duration of Plaintiff's sentence. *See Serrano*, 345 F.3d at 1078. Accordingly, the Court finds that the deprivation of recreational appliances for 60 days does not amount to one of "real substance" as defined by *Sandin*. Therefore, Plaintiff's allegations that his due process rights were violated in conjunction with this deprivation does not present a constitutionally cognizable claim. *See Sandin*, 515 U.S. at 484.

Defendants also assert that even if Plaintiff stated a cognizable claim, he was given all the process due. Dkt. No. 41 at 13. Due process for disciplinary hearings entails the following five procedural requirements as set forth by *Wolff v. McDonnell*, 418 U.S. 539 (1974): (1) "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense," *id.* at 564; (2) "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]," *id.*; (3) "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action," *id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)); (4) "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when

13

permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," *id.* at 566; and (5) "[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff," *id.* at 570.

The papers submitted by Plaintiff show that he was not deprived of any of the procedural protections under *Wolff*. Plaintiff first asserts that he was not given proper notice of the rule violation because the RVR states that he violated Rule CCR § 3005(d)(3), but he was found guilty of violating "C.C.R. § 3005(a) conduct a Divd.d(7) offense 'willfully delaying, any peace officer in the performance of duty, specifically participation in a mass disturbance (hunger strike).'" Dkt. No. 40 at 8. This claim is without merit. Although the RVR does cite to section 3005(d)(3), the specific acts alleged is "willfully delaying peace officer (participation in a mass hunger strike)." Dkt. No. 40 at 29. The statement of the circumstances for the RVR also includes the specific allegations that Plaintiff was found to have missed nine consecutive meals which coincided with the planned, statewide hunger strike. *Id.* Therefore, the RVR gave Plaintiff sufficient notice of the charges against him so that he could prepare a defense, which satisfies *Wolff*'s first notice requirement. 418 U.S. at 564. *Wolff*'s second requirement was also satisfied since the papers show that Plaintiff was given a copy of the RVR on July 20, 2013, and the hearing took place a month later, on August 20, 2013. Dkt. No. 40 at 29-30. The third *Wolff* requirement was also satisfied since Plaintiff was given a copy of the disciplinary hearing report prepared by the SHO, Defendant Graves, stating the evidence relied on and the reasons for the disciplinary action. *Id.* at 30-31. Lastly, the fifth *Wolff* requirement was satisfied because Plaintiff was not identified as having any disabilities or issues that would require assistance, and he also confirmed that an assignment of a staff assistance

14

was not necessary. *Id.* at 30.

Plaintiff claims that he was wrongfully denied his request to call Defendants Bumby and Espinoza as witnesses at the hearing, in violating of *Wolff*'s fourth requirement. Dkt. No. 40 at 8-9. Plaintiff asserts that had they been called as witnesses, he would have been able to prove that the inmate segregation record which was relied on by the RVR issuing officer was false and unreliable. *Id.* at 9. According to the disciplinary hearing report, the request for these two witnesses was denied because their testimony was deemed not relevant. Dkt. No. 40 at 30. On the other hand, Plaintiff was permitted to call the reporting officer, i.e., Defendant Navarro, as a witness, and Plaintiff himself was permitted to testify at the hearing. *Id*. Nowhere in his testimony does Plaintiff deny refusing his meal tray at least nine consecutive times. *Id.* at 30-31. Rather, he merely stated that at one time, he told Defendant Bumby that he was not on a hunger strike. *Id.* at 30. Accordingly, it cannot be said that the lack of the requested witnesses at the hearing violated Plaintiff's due process rights where he was allowed to call one relevant witness and was permitted to give testimony on his own behalf. Lastly, Plaintiff claims that Defendant Navarro's presence throughout the hearing violated his right to an impartial hearing under prison regulations. Dkt. No. 40 at 9-10. However, the Due Process Clause only requires that prisoners be afforded those procedures mandated by *Wolff* and its progeny; it does not require that prisons comply with its own, more generous procedures. *See Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994). A prisoner's right to due process is violated "only if he [is] not provided with process sufficient to meet the *Wolff* standard." *Id*. at 1420. As such, even if it were true that Defendant Navarro's presence violated the prison's more generous procedures, this violation does not constitute a due process violation. The submitted papers show that Plaintiff was provided with process sufficient to meet the *Wolff* standard; that is sufficient to satisfy due process. *See supra* at 14-15. Accordingly, Plaintiff's due process claim must be dismissed for failure to state a

cognizable claim for relief.

The dismissal is without leave to amend because Plaintiff has already been afforded one opportunity to amend. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003) (district court's discretion to deny leave to amend particularly broad where plaintiff has previously filed an amended complaint); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Furthermore, papers submitted by Plaintiff clearly show that the disciplinary proceedings at issue provided all of *Wolff's* procedural protections. *See supra* at 14-15. Accordingly, leave to amend is also denied on futility grounds because it is not factually possible for plaintiff to amend the complaint so as to cure the deficiencies. *Schmier v. United States Court of Appeals*, 279 F.3d 817, 824 (9th Cir. 2002).

Because the Court finds no constitutional violation, it is unnecessary to address Defendants' qualified immunity argument on this claim.

### III.  Unserved Defendant Bumby

According to the PBSP Litigation Coordinator, Defendant Bumby passed away on March 14, 2017. Dkt. No. 19; *see supra* at 1, fn. 1. The Court advised Plaintiff that he may attempt to locate Defendant Bumby's successor or representative, and then move for a substitution of the decedent party. Dkt. No. 20 at 2. To date, Plaintiff has failed to do so. Accordingly, Defendant Bumby remains unserved in this action.

The district court may, on its own motion, grant a motion to dismiss as to defendants who have not moved to dismiss where such defendants are in a similar position to that of moving defendants. *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981). First of all, Defendant Bumby is in a similar position as the moving Defendants with respect to the official capacity claims for damages, which are barred by the Eleventh Amendment. *See supra* at 5-6. Accordingly, Plaintiff's damage claims against Defendant Bumby in his official capacity must also be dismissed with prejudice.

Secondly, Defendant Bumby is in a similar position as Defendant Espinoza who

16

moved to dismiss the First Amendment claims against him based on qualified immunity as discussed above. *See supra* at 10. Plaintiff claims Defendant Bumby and Defendant Espinoza confiscated his personal food items on July 12, 2013, in retaliation for his peaceful protest. *Id.* at 3; Dkt. No. 40 at 7. Therefore, Defendant Bumby is in a position similar to Defendant Espinoza because Plaintiff's claim against them are based on the same incident. The Court has found that Defendants are entitled to qualified immunity on the First Amendment claims because at the time, reasonable officers in their position would not have been on notice of any clearly established law that disciplining an inmate for participating in a hunger strike violated the First Amendment. *See supra* at 10. And because Defendants would not have been on notice that Plaintiff's actions constituted protected conduct where such right was not clearly established, it cannot be said that it would have been clear to a reasonable officer in Defendant Espinoza's position that his actions, in confiscating food items while Plaintiff was on a hunger strike, would be considered retaliatory. *Id.* In the same way, it cannot be said that it would have been clear to a reasonable officer in Defendant Bumby's position that his actions, in participating in the confiscation of Plaintiff's food items, would be considered retaliatory. Accordingly, the Court *sua sponte* grants the motion to dismiss in favor of Defendant Bumby who is in a similar position as moving Defendants with respect to the Eleventh Amendment bar and qualified immunity on the First Amendment claims. *See Silverton*, 644 F.2d at 1345.

## CONCLUSION

For the reasons stated above, Defendants Warden R. K. Swift, Captain G. W. Olson, Lt. R. Graves, Sgt. R. Navarro, and Officer Espinoza motion to dismiss is **GRANTED**. Dkt. No. 41. The motion is also granted with respect to unserved Defendant Bumby who is in a position similar to the moving Defendants. All claims for damages against them in their official capacities are **DISMISSED with prejudice** as barred by the Eleventh

17

Amendment. The First Amendment claims are **DISMISSED with prejudice** based on qualified immunity. The Fourteenth Amendment claim against them is **DISMISSED with prejudice** for failure to state a claim.

This order terminates Docket No. 41.

**IT IS SO ORDERED.**

Dated:  __November 2, 2020___

*[signature]*
BETH LABSON FREEMAN
United States District Judge

Order Granting MTD
PRO-SE\BLF\CR.17\04000Miranda_grant.mtd

18